## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL BARENBAUM,** *on behalf of* | : | |
| *himself and all others similarly situated*, | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HAYT, HAYT & LANDAU, LLC,** | : | **No. 18-4120** |
| **Defendant.** | : | |

### MEMORANDUM

**Schiller, J.**                                                                                          **September 10, 2019**

Lawyers and laymen alike know that a "deposition" is not the same as just any conversation. A deposition is recorded testimony given under oath. There are thus consequences for failing to appear at a properly noticed deposition; in fact, one can be held in contempt of court for ignoring a notice of deposition. Nevertheless, Hayt, Hayt, & Landau, LLC, ("HHL" or "the firm"), the defendant law firm in this case, maintains that these features are just incidental to— rather than defining features of—a "deposition." This case turns on whether HHL's decision to issue thousands of deposition notices to judgment debtors without ever intending to take a deposition as it is traditionally understood amounts to a violation of the Fair Debt Collections Practices Act ("FDCPA").

Before the Court are several motions: HHL's motion to dismiss for lack of subject matter jurisdiction; cross-motions for summary judgment; and Daniel Barenbaum's motion for class certification. For the reasons set forth below, the Court will deny HHL's motion to dismiss, grant Barenbaum's motion for summary judgment with respect to Count II of the Complaint, grant HHL's motion for summary judgment with respect to Counts I and III, and grant Barenbaum's motion for class certification.

1

## I.     BACKGROUND

### A. Judgment against Barenbaum and Notice of Deposition

In 2014, Barenbaum failed to make payments on his Credit One credit card, and after several months, Credit One charged off his account with a balance of $1,011.39. (Def.'s St. of Undisputed Facts in Supp. of Mot. for Summ. J. [Def.'s SUF] ¶¶ 5, 7-8.) Credit One then sold the charged off account to Sherman Originator III, LLC ("Sherman"); Sherman, in turn, sold the account to Midland Funding, LLC ("Midland"). (*Id.* ¶¶ 10-11.) Midland retained the law firm HHL to help collect Barenbaum's debt. (*Id.* ¶ 13.) HHL obtained a default judgment against Barenbaum on behalf of Midland in the Court of Common Pleas in Bucks County, Pennsylvania. (*Id.* ¶¶ 16-17.) Seeking to recover the judgment, HHL mailed post-judgment interrogatories to Barenbaum in June of 2016 which included an offer to resolve the judgment through installment payments in lieu of responding to the questions. (*Id.* ¶ 18.)

In June of 2018, after Barenbaum failed to respond to the written discovery request, HHL sent Barenbaum a "Notice of Deposition in Aid of Execution" ("the Notice"). (*Id.* ¶¶ 19, 21.) At the top of the Notice was the name and address of the "Law Offices of Hayt, Hayt, & Landau, LLC" and the caption "Midland Funding LLC, Plaintiff vs. Daniel Barenbaum, Defendant(s)." (Pl.'s St. of Undisputed Facts in Supp. of Mot. for Summ. J. [Pl.'s SUF], Ex. B, Notice of Deposition in Aid of Execution.) The Notice directed Barenbaum to "appear and testify at a deposition" on July 6, 2018 at the Bucks County Bar Association and to produce documents to assist in the discovery of his income, assets, and property that could satisfy Midland's judgment. (*Id.*) Specifically, the Notice stated that:

**YOU ARE HEREBY NOTIFIED TO APPEAR AND TESTIFY AT A DEPOSITION IN AID OF EXEUCTION** concerning all of your income,

2

assets and property, including personal property, which may be subject to execution in satisfaction of the judgment obtained by Plaintiff against you in the above-captioned case, and to remain at the Deposition until excused.

(*Id.*)

On a separate page, which included the letterhead of HHL in lieu of the caption of the debt collection lawsuit, HHL stated that there was a judgment against Barenbaum and reiterated that a Notice of Deposition was enclosed. (*Id.*) Finally, on the fourth page of the Notice package, HHL provided an "Alternative to Deposition": "As an alternative to appearing at the Deposition, under the enclosed Notice of Deposition in Aid of Execution, you can settle the balance you owe under the judgment at a **20% balance reduction.**" (*Id.*)

### B. Barenbaum's Deposition Appearance

After receiving the Notice, Barenbaum contacted HHL and asked if he was required to attend the deposition. (Pl.'s SUF ¶ 8.) HHL told him that his attendance was required, so Barenbaum appeared in person at the designated location on July 6, along with his brother who is an attorney. (Def.'s SUF ¶ 30.) An attorney for HHL, Robert Cusick, appeared at the designated location on behalf of Midland. (*Id.* ¶ 32.) No court reporter or other individual permitted to administer an oath under the Pennsylvania Rules of Civil Procedure was present. (*Id.*)

The parties disagree about precisely what occurred thereafter. According to Barenbaum, when he arrived for his deposition, Cusick told him "this is very informal" and Barenbaum's brother stated that there should be a court reporter present. (Barenbaum Dep. at 47.) Cusick then indicated that he would "write off" the debt and Barenbaum would no longer owe any money. (*Id.* at 48.) Barenbaum contends that neither he nor his brother ever discussed Barenbaum's ability to satisfy the debt, and Barenbaum contends that Cusick never asked about his ability to do so. (*Id.* at 50-51.)

3

HHL contends that Barenbaum's brother represented to Cusick that Barenbahum did not have any assets to satisfy the judgment against him. (Decl. of Shannon Miller in Supp. of Def.'s Mot. for Summ. J., Ex. 6, Dep. of Robert Cusick [Cuisck Dep.], at 52-53.) Regardless, both parties agree that Cusick did not ask any questions about Barenbaum's assets but that Cusick ultimately reported back to HHL that Barenbaum did not have any assets to satisfy the judgment. (*Id.* ¶¶ 38-39.)

### C.  HHL's Policies and Procedures for Post-Judgment Depositions

As part of its efforts to recover debts owed to its clients, HHL regularly conducted post-judgment "depositions" in aid of execution. The instructions provided to HHL attorneys and other attorneys appearing for HHL at these depositions, indicated that the purpose of an appearance for a post-judgment deposition was "to obtain payment for balance in full or enter a voluntary settlement with the Defendant." (Pl.'s SUF, Ex. D, Appearance Counsel Instructions.) Counsel were instructed to direct a judgment debtor appearing for a deposition to first call HHL "for the purpose of discussing payment/settlement" before taking his or her deposition. (*Id.*) The instructions gave these attorneys settlement authority and included an attachment of questions to ask the judgment debtor. (*Id.*) HHL also explicitly directed counsel to "**NOT** administer an oath to the Defendant" but to "provide clear notes in regard to what occurred during the appearance," as HHL had "not retained the services of a court reporter." (*Id.*)

HHL typically scheduled numerous depositions at one time. Per HHL's "Post-Judgment Depositions Process and Procedure," HHL employees were instructed to schedule 30-90 depositions within a given 2.5 hour time slot. (Pl.'s SUF ¶ 16.) According to HHL, this is because approximately four to six percent of individuals who received the Notice of deposition would actually appear as required. (Def.'s Resp. to Pl.'s SUF ¶ 29.) Of those who appeared, only a small

fraction—just two percent—actually had a deposition taken. (*Id.* ¶ 30.) On the day that Barenbaum's deposition was scheduled, for instance, HHL scheduled 80 other post-judgment depositions, all of which were to be handled by a single attorney in one location between 9:00 and 11:30 a.m. (Pl.'s SUF ¶ 17.) Only three individuals appeared for their deposition on that date. (Def.'s Resp. to Pl.'s SUF ¶ 21.)

## II.    STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

When considering a motion to dismiss based on lack of subject matter jurisdiction, a court must determine whether the motion presents a "facial" or "factual" attack on subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). Where, as here, the moving party argues that the complaint, on its face, fails to establish subject matter jurisdiction, a court must accept the factual allegations in the complaint as true. *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[T]he standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion". *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Here HHL alleges that Barenbaum's claim is moot, which is a question of subject matter jurisdiction. *Mollett v. Leicth*, 511 F. App'x 172, 173 (3d Cir. 2013). The burden of demonstrating mootness "is a heavy one". *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979).

### B.  Motions for Summary Judgment

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary

judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party can demonstrate a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to decide in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. See *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

### C. Motion for Class Certification

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). The court must find by a preponderance of evidence that the plaintiff meets each of the Rule 23(a) and Rule 23(b)(3) requirements. *Id*. at 320.

## III.   DISCUSSION

### A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

"If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." *United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004). A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of V.I.*, 842 F.3d 201, 208 (3d Cir. 2016)

(quoting *Davis*, 440 U.S. at 631).The central question of all mootness issues is whether a change in the circumstances that prevailed at the beginning of the litigation has forestalled any occasion for meaningful relief. *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 39 (3d Cir. 1985).

HHL argues that Barenbaum's settlement agreement with Midland constituted the maximum amount Barenbaum could recover under the FDCPA. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss [Def.'s Mot. to Dismiss Br.] at 6-7.) Because he no longer has a personal stake in the action, HHL argues, Barenbaum's claims are now moot and the Court no longer has subject matter jurisdiction. (*Id.* at 6-9.)

HHL's argument overlooks the fact that Barenbaum has brought a class action claim. While the FDCPA limits statutory damages available in individual actions to $1000, *see* 15 U.S.C. § 1692k(a)(2)(A), a plaintiff asserting claims on behalf of a class has the opportunity for "greater financial recovery than he would otherwise obtain in an individual action." *Jarzyna v. Home Properties, L.P.*, 201 F. Supp. 3d 650, 657 (E.D. Pa. 2016). That is because the FDCPA specifically permits a named class plaintiff to recover not only the statutory damages available to him in an individual action but also, "a pro-rata share of the common fund that is generated for the benefit of the class." *Id.* at 658; *see* 15 U.S.C. § 1692k(a)(2)(B). Because Barenbaum still has the prospect of recovering additional funds as a named class plaintiff, he has not reached his maximum recovery and thus, still has a personal stake in the outcome of the case. Barenbaum's claims are not moot; the Court denies HHL's motion to dismiss.

### B.     Cross-Motions for Summary Judgment

Barenbaum claims that HHL has violated several provisions of the FDCPA: first 15 U.S.C. § 1692d, which prohibits debt collectors from "engag[ing] in any conduct the natural consequence

of which is to harass, oppress, or abuse any person in connection with the collection of a debt;" second § 1692e, which prohibits debt collectors from "us[ing] false, deceptive, or misleading representation or means in connection with the collection of any debt;" and finally § 1692f, which provides that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." Both Barenbaum and HHL have now moved for summary judgment. For the reasons that follow, the Court finds that, the natural consequence of HHL's conduct was not to "harass, oppress, or annoy." Thus, summary judgment will be granted in favor of HHL on the Section 1692d claim. Similarly, Barenbaum failed to provide additional evidence of HHL's conduct in violation of the FDCPA beyond that which supports his claim under Section 1692e. As a result, the Court will grant summary judgment to HHL on Barenbaum's Section 1692f claim. However, the Court will grant summary judgment in favor of Barenbaum on his Section 1692e claim. Viewed from the perspective of the least sophisticated debtor, HHL's Notice was false, deceptive, and misleading.

### 1.    Background on the FDCPA

In response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress passed the FDCPA. 15 U.S.C. § 1692(a), (e). Because the FDCPA is a remedial statute, the Third Circuit "construe[s] its language broadly so as to effect its purpose." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011). Accordingly, courts analyze debt collector communications from the perspective of the "least sophisticated debtor" when assessing whether there has been a violation of the FDCPA. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). This standard ensures that "the FDCPA protects all consumers, the gullible as well as the shrewd." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). This standard is "lower than the standard of a reasonable debtor,"

but nonetheless "preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Whether a communication would be misleading or deceptive to the least sophisticated debtor is a question of law. *Santiago v. A.R. Resources, Inc.*, Civ. A. No. 14-4240, 2015 WL 851818, at *3, n.1 (E.D. Pa. Feb. 26, 2015) (collecting cases).

To state a claim under the FDCPA, a plaintiff must prove four elements: (1) he is a consumer; (2) the defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Here, the parties agree that the first three elements are met. The only contested issue is whether HHL violated any provisions of the FDCPA.

### 2.    Section 1692d

The FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Here, issuance of the Notice cannot be considered "harassing or oppressive behavior" in violation of Section 1692d. As HHL points out, Pennsylvania law permits post-judgment discovery, including depositions. *See* 231 Pa. Code Rule 3117(a). While HHL did not actually intend to have Barenbaum "testify at a deposition," that fact does not transform sending the Notice from a permissible action, contemplated by the rules of discovery in Pennsylvania, to harassing or oppressive behavior in violation of Section 1692d. *See Golem v. Palisades Acquisition XVI, LLC*, Civ. A. No. 11-02591, 2012 WL 2995480, at *2-3 (N.D. Ohio July 23, 2012) (holding that mailing post-judgment notice of deposition in aid of execution, as contemplated by the Ohio Rules of Civil Procedure, for a deposition that was to take place in an

inconvenient and distant forum did not violate Section 1692d). Because there are no genuine disputes of material fact and the Court finds that HHL's conduct was not abusive, oppressive, or harassing as a matter of law, summary judgment is granted to HHL on this claim.

### 3. Section 1692e

Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. The provision includes sixteen subsections, which "set forth a non-exhaustive list of practices that fall within this ban." *Lesher*, 650 F.3d at 997. Among the enumerated practices, Section 1692e(5) bans, "[t]he threat of any action that cannot legally be taken or that is not intended to be taken."

To determine whether a debt collector's conduct violates Section 1692e, the Third Circuit has instructed courts to "focus on whether a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." *Jensen*, 791 F.3d at 420. "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown*, 464 F.3d at 455. However, "[a] debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material," meaning that "it is capable of influencing the decision of the least sophisticated debtor." *Jensen*, 791 F.3d at 421.

The Court finds that there is no genuine dispute of fact regarding whether HHL violated Section 1692e. The Notice indicated that HHL intended to depose the recipient when, in fact, no reasonable finder of fact could conclude that this was true. In Pennsylvania, while there is no dispute that depositions in aid of execution are permissible under the Pennsylvania Rules of Civil Procedure, the Rules also make clear that such post-judgment discovery must comport with the rules governing all other depositions. *See* 231 Pa. Code Rule 3117(a). That means that post-

judgment depositions must be transcribed and the deponent must be placed under oath. *See* 231 Pa. Code Rule 4015, 4017. These "procedural" features are not merely formalities, they ensure that the information learned at a deposition can be relied upon.  Thus, while HHL devised questions for counsel appearing at depositions to ask judgment debtors, this does not amount to an intention to take a deposition. The firm's instructions to counsel specifically advised them to "**NOT** administer an oath" to the judgment debtor, as HHL had not retained any court reporter or other individual who could do so under the Pennsylvania rules. (Pl.'s SUF, Ex. D, Appearance Counsel Instructions.)

Because there are no other material factual disputes, the question for the Court is whether issuing a notice of deposition in aid of execution that HHL never intended to take constitutes a misleading or deceptive representation or means of collecting a debt in violation of Section 1692e of the FDCPA. The Court is persuaded that it does for two reasons.

First, the Notice's statement that Barenbaum and other judgment debtors were to "appear and testify at a deposition" was false and misleading given that no "deposition" was ever scheduled to occur. The least sophisticated debtor – and indeed, debtors of significantly greater sophistication – would read the Notice to say that HHL intended to conduct a deposition when at most HHL sought only an informal conversation regarding the debtor's ability to satisfy his or her debt. This contravenes § 1692d's prohibition on "[t]he threat of any action that . . .is not intended to be taken." 1692e(5).

Second, the falsity was material, which is to say it was capable of influencing the decision of the least sophisticated debtor. This is because a deposition, unlike the sort of informal conversation HHL intended to initiate, is a formal legal proceeding for which failure to appear can trigger a variety of sanctions, including holding the noncompliant party in contempt of court. 231

11

Pa. Code Rule 4019(c)(4). As a result, receiving a notice stating that you must "**APPEAR AND TESTIFY AT A DEPOSITION**" underneath a court case caption could reasonably lead the least sophisticated debtor to resolve their debt or appear at the deposition when they would not otherwise do so.

HHL argues that this case is analogous to *Simon v. FIA Card Services NA*, and *Jensen v. Pressler & Pressler* – two cases in which the Third Circuit found that procedural defects in subpoenas sent to debtors did not render issuance of the subpoenas "false, deceptive, and misleading" for the purposes of § 1692e. 639 F. Appx 885, 890 (3d Cir. 2016); 791 F.3d at 422. In those cases, there was no evidence that the defendant lacked intent to initiate a formal discovery device.  Instead, the defendant had simply failed to meet all necessary procedural requirements. In *Simon*, the notices were not personally served on the subjects and failed to include certain text from Rule 45. 639 F. App'x at 886. In J*ensen*, the subpoena contained an incorrect name on the signature line for the clerk of the Superior Court.791 F.3d at 416. Here, the evidence uniformly shows that, as a matter of policy, HHL never intended to take any of the steps necessary to depose Barenbaum or any other recipient of the Notice. Thus, whereas there was no evidence that the *Simon* and *Jensen* defendants lacked intent to subpoena the debtors, all pertinent evidence shows that HHL lacked intent to depose Barenbaum and other recipients of the Notice.  As a result HHL violated the § 1692e(5) whereas the *Simon* and *Jensen* defendants did not.

Because there are no genuine disputes of material fact that HHL's Notice contained false and misleading information and threatened action HHL did not intend to take, summary judgment is granted in favor of Barenbaum on this claim.

####        4.        Section 1692f

Under the FDCPA, debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f "serves as a catch-all provision that permits courts to sanction conduct the FDCPA fails to otherwise specifically address." *Montgomery v. Midland Credit Mgmt., Inc.*, Civ. A. No. 12-1244, 2014 WL 3563198, at \*7 (E.D. Pa. June 19, 2014). Barenbaum appears to have abandoned his claim under this provision; he did not address it in either his motion for summary judgment or in his opposition to HHL's motion for summary judgment. He was right to do so. A plaintiff may not recover under this section "solely for conduct that she has already alleged violates another FDCPA provision." *Id.* Barenbaum has failed to support his Section 1692f claim with any evidence independent of the evidence he has advanced for his other FDCPA claims. Summary judgment is granted to HHL on this claim.

####        5.   The Bona Fide Error Defense

HHL contends that it is shielded from liability under the FDCPA by the "bona fide error" defense. (Def.'s Summ. J. Br. at 20.) Under § 1692k(c) of the FDCPA, a debt collector cannot be held liable for violations that are "not intentional and resulted from a bona fide error". *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 393 (3d Cir. 2017). As HHL sees it, it misinterpreted Pennsylvania law regarding what is and is not a deposition, its misinterpretation was a bona fide error under § 1692k(c), and therefore it is not liable for any resulting violation of the FDCPA. (Def.'s Summ. J. Br. at 19) ("All evidence produced demonstrates that HHL intended to depose Barenbaum when the Notice was mailed to him and HHL did not perceive its practice as defective.") However, even assuming HHL genuinely misunderstood the meaning of the word deposition, HHL's claim fails at the outset, as HHL cannot invoke the bona fide error defense when the error in question is a misinterpretation of state law.

13

Section 1692k(c), holds that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.* [*Jerman II*] the Supreme Court held that a defendant could not claim that a violation of the FDCPA was "not intentional" when it took deliberate action that violated the FDCPA, but did so pursuant to a good faith misinterpretation of the FDCPA's requirements, and thus lacked intent to violate the FDCPA. 559 U.S. 573 (2010). The Court gave five reasons for its reading of § 1692k(c). First, the Court held that § 1692k(c) should be interpreted in the context of "the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally". *Jerman II*, 559 U.S. at 581 (quoting *Barlow v. United States*, 32 U.S. 404 (1833)). Second, the Court noted that Congress had not explicitly indicated that § 1692k(c) provided a mistake of law defense to civil liability, nor specified that violations of the FDCPA must be "willful". According to the Court, Congress generally takes both steps when it intends to make mistake of law a defense to civil liability. *Id*. at 583-85. Third, the Court noted that the bona fide error defense is available only to debt collectors who maintain "procedures reasonably adapted to avoid any such error", a statutory phrase the Court reasoned was "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes". *Id*. at 587. To the Court, this suggested the defense did not apply to mistakes of law because "legal reasoning is not a mechanical or strictly linear process." *Id*. Fourth, the Court noted that "Congress included in the FDCPA not only the bona fide error defense but also a separate protection from liability for any act done or omitted in good faith in conformity with any advisory opinion of the [FTC]." *Id*. at 587-88 (citing § 1692k(e)). The Court found that interpreting § 1692k(c) to

encompass mistaken interpretations of the FDCPA would effectually read § 1692k(e) out of the statute because "[d]ebt collectors would rarely need to consult the FTC if § 1692k(c) were read to offer immunity for good-faith reliance on advice from private counsel." *Id.* at 588. Finally, the Court found that the text of § 1692k(c) was "in pertinent part identical" to an affirmative defense provided for in the Truth in Lending Act, which "the three Federal Courts of Appeals to consider the question interpreted . . . as referring to clerical errors." *Id.* at 590. According to the Court "[w]e have often observed that when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" *Id.* at 589-90 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)).

Crucially, while *Jerman II* resolved the issue of whether defendants could invoke the bona fide error defense due to misinterpretation of the FDCPA, the Court left open the question of whether the defense is available to defendants who incur FDCPA liability due to misinterpretation of state law. *Jerman II*, 559 U.S. at 581 n.4. In the nine years following *Jerman II*, district courts have disagreed about the answer.[1] On one side, several courts have concluded that defendants whose misinterpretation of state law led them to violate the FDCPA had committed a bona fide error. *Stratton v. Portfolio Recovery Assocs., LLC*, 171 F. Supp. 3d 585, 603-04 (E.D. Ky. 2016); *Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243, 267 (E.D. Pa. 2015); *Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1287 (E.D. Wash. 2015); *Newton v. Portfolio Recovery Assocs., LLC*, Civ. A. No. 12-698, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014); *Puffinberger v. Commercion,*

---

[1] Two courts in this Circuit appear to have disagreed on the matter. *Compare*, *Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243, 267 (E.D. Pa. 2015) ("[T]he Supreme Court [in *Jerman II*] did not reach the question of whether mistakes of state or contract law are similarly outside the scope of the bona fide error defense. The Court sees no reason why such mistakes should not be covered by the defense."), *with Chung v. Shapiro & Denardo, LLC*, Civ. A. No. 14-6899, 2015 WL 3746332, at *4 (D.N.J. June 15, 2015) (holding that *Jerman II* rejected the argument that an error of law provides a defense to liability under the FDCPA).

*LLC*, Civ. A. No. 13-1237, 2014 WL 120596, at *5 (D. Md. Jan. 10, 2014); *Durthaler v. Accounts Receivable Mgmt.*, 854 F. Supp. 2d 485, 493 (S.D. Ohio 2012); *Rice v. Javitch Block & Rathbone, LLP*, Civ. A. No. 4-951, 2011 WL 3861701, at *7-8 (S.D. Ohio Aug. 31, 2011); *Hare v. Hosto & Buchan, PLLC*, 774 F. Supp. 2d 849, 854-56 (S.D. Tex. 2011). On the other hand, some courts have found that the bona fide error defense does not apply to mistakes of state law. *Thompson v. Midland Funding, LLC*, 375 F. Supp. 3d 774, 785-87 (E.D. Ky. 2019); *Verburg v. Weltman, Weinberg & Reis Co., L.P.A.*, 295 F. Supp. 3d 771, 774 (W.D. Mich. 2018); *Harden v. Autovest, L.L.C.*, Civ. A. No. 15-34, 2016 WL 6997905, at *2 (W.D. Mich. Nov. 30, 2016); *Chung v. Shapiro & Denardo*, *LLC*, Civ. A. No. 14-6899, 2015 WL 3746332, at *4 (D.N.J. June 15, 2015); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 82 (D. Mass. 2012); *Moxley v. Pfundstein*, Civ. A. No. 10-2912, 2012 WL 4848973, at *4 (N.D. Ohio Oct. 11, 2012); *New v. Gemini Capital Grp.*, 859 F. Supp. 2d 990, 998 (S.D. Iowa 2012).

    This Court now sides with the second group of decisions. Four of the five reasons the Supreme Court gave for its holding in *Jerman II* indicate that a defendant's deliberate action cannot be "not intentional" under § 1692k(c) simply because the defendant believed the action comported with the law. First, ignorance of a law almost never excuses its violation. *Jerman II*, 559 U.S. at 581. Second, Congress did not specify that § 1692k(c) should encompass mistakes of law or require that violations of the FDCPA be willful. *Id*. at 583-85. Third, limiting § 1692k(c) to debt collectors with "procedures reasonably adapted to avoid any such error" implies the errors in question are clerical rather than analytical. *Id*. at 587. Finally, the language of § 1692k(c) tracks the language a pre-FDCPA statute that Courts of Appeals had uniformly found to lack a mistake of law defense. *Id*. at 590. The logical extension of each of these conclusions is that mistakes of

law – state or federal – are not enough to render an otherwise deliberate action "not intentional" for the purposes of 1692k(c).

This conclusion is in harmony with the law in the Third Circuit. *See DiNaples v. MRS BPO, LLC*, Civ. A. No. 18-2972, 2019 WL 3773014, at *5 (3d Cir. Aug. 12, 2019); *Daubert*, 861 F.3d at 394 (3d Cir. 2017) (same).  In *Daubert v. NRA Group*, a debt collector violated the FDCPA by sending a collection letter containing a visible barcode that, when scanned, revealed the debtor's account number. 861 F.3d at 386-87. The debt collector conceded that it had violated the FDCPA but argued that it was shielded from liability by the bona fide error defense because it had relied in good faith on two district court decisions approving similar practices. The Third Circuit disagreed, finding that the defendant could not make the showing required by § 1692k(c) that the error had occurred despite "procedures reasonably adapted" to avoid it. *Id.* at 395. The Third Circuit reasoned that, because "procedures" are "processes that have mechanical or other such regular orderly steps" designed to "avoid errors like clerical or factual mistakes," a defendant whose FDCPA violation stemmed from a legal rather than clerical error could never make the necessary showing that the error occurred despite "procedures reasonably adapted" to avoid it. *Id.* In *Naples v. MRS BPO, LLC*, the Third Circuit reiterated the point, noting that: "FDCPA violations forgivable under § 1692k(c) must result from 'clerical or factual mistakes,' not mistakes of law." WL 3773014, at *5 (quoting *Daubert*, 861 F.3d at 394).

Though the errors that gave rise to FDCPA liability in *NRA Group* and *DiNaples* were both misinterpretations of the FDCPA, not state law, the reasoning in both cases is applicable here. If defendants seeking to invoke the bona fide error defense must show that they have "procedures reasonably adapted to avoid [similar] errors", and "procedures . . . are processes that have mechanical or other such regular orderly step designed to avoid errors like clerical or factual

mistakes", and "legal reasoning is not a mechanical or strictly linear process amendable to such procedures", it follows that a debt collector that erroneously interprets state law cannot invoke the bona fide error defense. A defendant simply could not show that they have "procedures reasonably adapted to avoid [legal] errors".

As a result, this Court does not see how, after *Jerman II*, § 1692k(c) could be read to permit an FDCPA defendant to apply the bona fide error defense to misinterpretation of state law. Neither the post-*Jerman II* district court rulings, nor HHL, have explained how such an application of § 1692k(c) could be squared with the Supreme Court's reasoning in *Jerman II*. As such, the bona fide error defense does not provide a shield by which HHL can avoid liability, even if their liability under FDCPA stems from a good faith misreading of Pennsylvania law.[2]

### C.    Motion for Class Certification

Barenbaum seeks to certify a class consisting of

(1) all consumers residing in the Commonwealth of Pennsylvania (2) who received a 'Notice of Deposition In Aid Of Execution' from the Defendant (3) on an obligation owed or allegedly owed to Midland Funding, LLC, (4) during the time period of September 25, 2017 to September 24, 2018, and (5) who thereafter appeared as directed at the date, time and location noticed for the Deposition.[3]

---

[2] The Court notes in passing that Pa.R.C.P 3117(a) explicitly states that post-judgment discovery must comport with the rules relating to Depositions and Discovery, rules that explicitly mandate depositions be taken under oath (Pa.R.C.P 4015), recorded, and transcribed (Pa.R.C.P. 4017). The statutory scheme is neither ambiguous nor opaque. As such, it is difficult to imagine how HHL's conduct could arise from a good faith attempt to comport with Pennsylvania law. However, having found that question immaterial to the applicability of the bona fide error defense, this Court declines to analyze the matter any further.

[3] This precise class definition is different than the definitions appearing in either the Complaint or Barenbaum's Motion for Class Certification. First, the Motion for Class Certification's definition is limited to recipients of the Notice who appeared for deposition, but the Complaint's definition is not. Second, the Motion for Class Certification is limited to recipients whose version of the Notice contains the language "If you carry any insurance that may cover this obligation, please contact our office at the number above". The Complaint's definition does not. The third difference is that the Complaint's definition refers to "consumers residing in the State of Pennsylvania" while the Motion for Class Certification refers to "Pennsylvania Consumers."

Courts of this circuit are not bound by the class definition proposed in the Complaint. *Wiesfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004). Rather they may amend the definition *sua sponte* to ensure that its order certifying the class is proper. *Oetting v. Heffler, Radetich & Saitta, Llp*, No. Civ. A. No. 11-4757, 2016 WL 1161403, at *5 (E.D. Pa. Mar. 24, 2016). The Court will use its discretion here to resolve the discrepancies between the proposed class detentions. First, the Court adopts the Complaint's more precise language "[a]ll consumers residing in the [Commonwealth] of Pennsylvania" rather than the Motion for Class Certification's more general "Pennsylvania Consumers". Second, the Court will not limit the class to those whose Notice included the language concerning

To certify a class action, a court must find that the four requirements of Rule 23(a) are met. Rule 23(a) allows class certification only if:

> 1) The class is so numerous that joinder of all members is impracticable [Numerosity];
>
> 2) There are questions of law or fact common to the class [Commonality]; [4]
>
> 3) The claims or defenses of the representative parties are typical of the claims or defenses of the class [Typicality]; and
>
> 4) The representative parties will fairly and adequately protect the interests of the class [Adequacy].

In addition, because Barenbaum seeks to certify a class action under Rule 23(b)(3), he must also satisfy the additional requirements of that subsection. Rule 23(b)(3) requires that "(i) common questions of law or fact predominate [Predominance], and (ii) the class action is the superior method for adjudication [Superiority]." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). Finally, the Third Circuit recognizes an implicit requirement that plaintiff's seeking certification of a Rule 23(b)(3) class demonstrate that the class is ascertainable [Ascertainability]. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).[5]

### 1. Rule 23(a) Requirements

---

insurance. Barenbaum, in his Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion for Class Certification [Pl.'s Reply Mem. For Certification] asserted that this language was inserted in error. (Pl.'s Reply Mem. For Certification at 5.) Finally, per Barenbaum's Motion for Class Certification, the class will be limited to recipients of the Notice who actually appeared for deposition Mem. of Law in Supp. Of Pl.'s Mot. for Class Certification. ["Pl.'s Mem. For Certification."] at 10.)

[4] The predominance inquiry is similar to, but more stringent than, the commonality inquiry under Rule 23(a)(2). *See Peroxide*, 552 F.3d at 311. Because of this, it is appropriate to treat the commonality inquiry as subsumed into the predominance inquiry in Rule 23(b)(3) class actions. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). The Court will do so here.

[5] In addition to challenging class certification based on the above factors, HHL rearticulates its claim that Plaintiff's settlement with Midland moots its claims as a reason to deny class certification. Having previously determined that the Midland settlement does not moot Barenbaum's claims for class-wide relief under FDCPA, *supra* Part III.A., HHL's argument fails here as well.

### i.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiffs bear the burden of showing "that there are in fact sufficiently numerous parties." *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013). Plaintiffs may rely on either direct or circumstantial evidence to do so, and need not pinpoint an exact number of class members. *Marcus*, 687 F.3d at 596. While there is no minimum number of plaintiffs required, if the "potential number of plaintiffs exceeds 40," the requirement is typically satisfied. *Marcus*, 687 F.3d at 595.

The numerosity requirement has been satisfied. HHL disclosed that, between September 25, 2017 and September 24, 2018 it mailed a Notice of Deposition in Aid of Execution in relation to obligations owed to Midland to 328 individuals residing in Pennsylvania who subsequently appeared as directed at the date, time, and location noticed for Deposition. (Pl's. Mot. to Certify Class, Ex. B, Def.'s Suppl. Resp. to Pl.'s First Set of Interrog., at 9.) Each of the recipients of the Notice would qualify as consumers under the FDCPA, as the FDCPA defines "consumer" as "any natural person obliged or allegedly obliged to pay any debt", 15 U.S.C. § 1692a(3). A class consisting of 328 individuals is numerous enough to make joinder of all members impracticable. *See Marcus*, 687 F.3d at 595.

### ii.   Typicality

The typicality prong of class certification evaluates whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985). The requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with

20

those of the absentees." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). When the named plaintiffs challenge the same unlawful conduct that affects the putative class, the requirement is usually met "irrespective of the varying fact patterns underlying the individual claims." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Here, the typicality requirement is clearly met. Courts in this district have consistently found that a named plaintiff's claims regarding violation of the FDCPA are typical of the class he or she seeks to represent when the plaintiff and class members received virtually identical letters that violate the FDCPA in the same or similar fashion. *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 138 (E.D. Pa. 2006); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006); *Bonett v. Educ. Debt Servs., Inc.*, Civ. A. No. 01-6528, 2003 WL 21658267, at *3 (E.D. Pa. May 9, 2003); *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 468 (E.D. Pa. 2000). Here, each member of the proposed class received a notice asserting that they were "hereby notified to appear and testify at a deposition". Barenbaum claims that each notice violated the FDCPA in identical fashion.

In response, HHL argues that the typicality requirement is not met because Barenbaum may be subject to unique defenses. (Def.'s Opp'n to Certification at 11.) Unique defenses are relevant to typicality analysis because, when unique defenses are present, there is a danger that the representative will become preoccupied with such defenses, thereby disadvantaging the class. *Beck v. Maximus, Inc.*, 457 F.3d 291, 296-97 (3d Cir. 2006). When arguing that a named plaintiff is not typical of the proposed class because the plaintiff is subject to unique defenses, the defendant must show "some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification." *Id.* at 300.

21

HHL, articulates two defenses it claims are unique to Barenbaum: (1) that his Complaint and deposition testimony conflict regarding whether Barenbaum prepared documents in advance of deposition and received a settlement offer at his deposition and (2) that Barenbaum was unaware the Notice requested the production of documents.  However, neither defense is relevant to HHL's liability under the FDCPA. HHL's lability turns on whether the Notice, when read by the least sophisticated debtor, would amount to: (a) " conduct the natural consequence of which is to harass, oppress, or abuse" (§ 1692d), (b) "us[ing] false, deceptive, or misleading representation" (§ 1692e), or (c) "unfair or unconscionable means to collect . . . any debt" (§ 1692f). The use of the "least sophisticated debtor" standard means that Barenbaum's particular experience – whether he knew the Notice required the production of documents, actually prepared documents, or was given a settlement offer – does not determine HHL's FDCPA liability. As such, the unique defenses HHL posits do not suggest Barenbaum's individual circumstances or operative legal theories are atypical of the proposed class.

### iii.   Adequacy

Rule 23(a)'s adequacy requirement demands two distinct conditions to be met. First, there must not be a conflict of interest between a named plaintiff and the class they seek to represent. Second, counsel for the proposed class representative must be qualified to represent the class.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998).

#### a.   Adequacy of Barenbaum as Class Representative

"The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). The inquiry therefore focuses primarily on whether the class representatives have conflicts of interest

with the putative class members; it does not require that the representatives possess more than "a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Moreover, only a "fundamental" conflict of interest will be sufficient to impact the adequacy analysis. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*. (internal quotation marks omitted).

Barenbaum is an adequate representative. He possess the "minimal degree of knowledge" necessary to represent other class members. He participated in the proceedings, working with counsel throughout the process and attending depositions. Moreover, HHL has not raised any issues that suggest a fundamental conflict of interest between Barenbaum and the class members. The Court is not aware of any reason why Barenbaum's efforts to impose liability on HHL under the FDCPA might harm the interests of other class members.

HHL attacks Barenbaum's adequacy on the grounds that he "does not embody the 'least sophisticated consumer.'" (Def.'s Opp'n to Certification at 14-15.) The least sophisticated debtor standard presumes a "basic level of understanding and willingness to read with care" (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)). HHL claims Barenbaum does not embody this standard because he "failed to read the Notice with care as he failed to realize that it was seeking the production of documents", "nor did he realize that the notice contained an alternative to appearing in the form of a proposed settlement offer." (Def.'s Opp'n to Certification at 14-15.)

HHL misunderstands the role of the "least sophisticated debtor". The "least sophisticated debtor" is not a standard that FDCPA class-plaintiffs must meet. Rather it is an objective standard,

application of which means that the actual sophistication of the plaintiffs themselves does not determine FDCPA liability. *Simon*, 639 F. App'x at 888 ("This judge-made standard is objective, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be."). As such Barenbaum's actual sophistication relative to that of the "least sophisticated debtor" is not relevant to his adequacy as named plaintiff.

HHL also argues that Barenbaum is an inadequate representative because "his credibility will be seriously called into question." (Def.'s Opp'n to Certification at 15.) The credibility of the named plaintiff is relevant to the adequacy requirement. *Dotson v. Portfolio Recovery Assocs., LLC*, Civ. A. No. 08-3744, 2009 WL 1559813, at *2 (E.D. Pa. June 3, 2009). "[A] named plaintiff must exhibit enough integrity and credibility to convince the court that the named plaintiff will diligently perform its fiduciary duties to the class." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100 (E.D.N.Y. 2012). To that end, HHL questions Barenbaum's credibility on two grounds. First, HHL reiterates its claim that Barenbaum's Complaint and deposition testimony conflict regarding whether Barenbaum prepared documents in advance of deposition and received a settlement offer. (Def.'s Opp'n to Certification at 15.) However, parties looking to defeat class certification must show not only that named plaintiff gave inconsistent testimony, but that the inconsistency concerns an issue central to the litigation. *E.g.*, *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 123–24 (E.D. Pa. 2018) ("While there are certainly questions regarding Harris' and Williams' testimony and allegedly falsified timesheets, the questions do not raise a fundamental concern as to their ability to represent the putative class as . . . [n]amed Plaintiffs truthfulness in their timesheets are unlikely to become central issues in the case . . . ."). Here, inconsistencies in Barenbaum's statements regarding settlement offers at his deposition do not touch on his adequacy

as a class representative because HHL's liability does not turn on whether or not it in fact made a settlement offer. Instead, HHL's liability under FDCPA stems from the fact that it notified Barenbaum and other class members that they must appear for a deposition concerning debts owed to Midland, but did not actually intending to depose said recipients when they appeared. Whether or not HHL made a settlement offer is irrelevant. As such, any lack of credibility Barenbaum has regarding whether or not HHL made a settlement offer is not a credibility deficit on issues central to the case. As a result, even if HHL's charges regarding Barenbaum's credibility are taken as true, they do not render Barenbaum an inadequate class representative.

HHL further argues that Barenbaum is an inadequate class representative because he recently pled guilty to theft of service. (Def.'s Opp'n to Certification at 15.) This is a misdemeanor under Pennsylvania Law and might subject Barenbaum to impeachment under the Federal Rules of Evidence. But, past criminal conduct does not immediately disqualify a named plaintiff. One of two other conditions must be met, and here, they are not.

First, courts have found a proposed class representative's past criminal conduct disqualifying when "the close relationship between the criminal conduct and the subject matter of the lawsuits cast doubt on whether the proposed representatives could vigorously prosecute the case on behalf of the entire class." *McCall v. Drive Fin. Servs.*, L.P., 236 F.R.D. 246, 251 (E.D. Pa. 2006) (collecting cases where "the alleged criminal or unethical behavior that rendered the class representatives inadequate was relevant to the class action at hand . . . ."). Here, there is no conceivable relationship between Barenbaum's theft of service and the case at hand. *Contra. Hall v. Nat'l Recovery Sys., Inc.*, Civ. A. No. 96–132, 1996 WL 467512, at *5 (M.D. Fla. 1996) (proposed class representative was inadequate in part because he had been convicted of numerous crimes including issuing worthless checks such as the one defendants had allegedly violated the

FDCPA attempting to collect). Second, courts have found class representatives inadequate when they have either an extensive criminal history, *Marquita Sanders v. W & W Wholesale Inc.*, Civ. A. No. 11-3557, 2012 WL 3987629, at *5 (N.D. Ill. Sept. 11, 2012), or have been convicted of an offense that is by itself devastating to the representative's credibility, *Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 396-97 (S.D.N.Y. 1983). Here, Barenbaum pled guilty to a single misdemeanor stemming from an unpaid $30 bar tab. (Pl.'s Reply Mem. For Certification at 10, Ex. B, Barenbaum Dep. at 81-82.) This conviction does not rise to the level of reprehensibility necessary to render Barenbaum an inadequate representative. The Court concludes that Barenbaum is an adequate class representative.

### b.   Adequacy of Marcus & Zelman, LLC as Class Counsel

Courts must also evaluate the adequacy of class counsel, considering factors including: (1) "the work counsel has done in identifying or investigating potential claims in the action", (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action", (3) "counsel's knowledge of the applicable law", and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court is satisfied that Barenbaum's attorneys have the experience and qualifications to handle this litigation. Plaintiff's attorneys have explained their qualifications in their Motion for Class Certification detailing their experience handling FDCPA class actions. (Pl.'s Mem. For Certification at 15-17.) The Court thus appoints Marcus & Zelman, LLC as class counsel.

### 2.   Rule 23(b)(3) Requirements

### i.   Ascertainability

The Third Circuit has recognized an implicit requirement for class certification under Rule 23(b)(3) that the class be ascertainable. *Marcus*, 687 F.3d at 592–93. The ascertainability

requirement "eliminates serious administrative burdens . . .by insisting on the easy identification of class members," and "protects absent class members by facilitating the best notice practicable," and "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Id*. at 593. To meet the ascertainability requirement, plaintiffs must satisfy two elements. *Byrd v. Aaron's, Inc*., 784 F.3d 154, 163 (3d Cir. 2015). First, they must show that the class can be ascertained based on objective criteria, as opposed to "subjective criteria, such as class members' state of mind." *City Select Auto Sales v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 n.3 (3d Cir. 2017). Second, plaintiffs must demonstrate that "there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163.

Both conditions are met here. First, membership in the class can be determined using objective criterion. To determine whether an individual belongs to the proposed class, the Court would need to know whether the individual (1) qualifies as a consumer under the FDCPA, (2) resides in Pennsylvania, (3) received a "Notice of Deposition In Aid Of Execution" on an obligation owed or allegedly owed to Midland between September 25, 2017 and September 24, 2018, and (4) thereafter appeared as directed. A perspective class member either has each of these characteristics or they do not, and all can be proven or disproven via concrete evidence. *Cf. Simer v. Rios*, 661 F.2d 655, 669–70 (7th Cir.1981) (affirming denial of certification of class of people who felt discouraged from applying for government energy assistance); *A.R. v. Dudek*, Civ. A. No. 12-60460, 2016 WL 3766139, at *1 (S.D. Fla. Feb. 29, 2016) (noting that a class where membership was defined, in part, as people who are "unnecessarily institutionalized", would lack objective criteria and thus would not be ascertainable.) Second, Barenbaum has demonstrated that there is a "reliable and feasible mechanism" for determining class membership. Whether an

27

individual received the Notice in Pennsylvania and subsequently appeared for deposition can be ascertained from HHL's business records.

HHL challenges the ascertainably of the proposed class, arguing "[i]n order to ascertain members of the class, the Court will be required to conduct mini-trials as to each of the 328 individuals identified to ascertain if they, too, were offered a settlement instead of being deposed." (Def.'s Opp'n to Certification at 7.) However, the thrust of HHL's argument – that HHL would only be liable to those class members who received settlement offers – is incorrect. HHL's liability to a class member does not turn on whether HHL made a settlement offer when the class member appeared for deposition. Instead FDCPA liability stems from the fact that when HHL sent the Notice, the Notice conveyed HHL's intent to take the recipient's deposition, when in fact HHL did not intend to take the recipients deposition. *See supra* Part III.B.3 Thus, the Court would not need to hold mini-trials regarding what attorneys representing HHL did or did not offer when the recipient appeared for deposition because this is not the basis for HHL's FDCPA liability.

### ii. Predominance

To certify a class, Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The purpose of the requirement is to determine whether the proposed class is "sufficiently cohesive" to warrant class treatment. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The predominance inquiry requires courts to consider whether the common issues in a putative class action "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately, such as damages . . . ." *Id*. In analyzing the predominance factor, courts must determine not only whether there are common questions of law or fact, but whether those questions are capable of class-wide answers through common evidence. *Dukes*, 564 U.S. at 350.

Predominance is met here. Courts in this district have found that the factual and legal issues in an FDCPA class action based on the debt collector's alleged misrepresentations are generally identical for all class members. *See, e.g.*, *Blandina v. Midland Funding, LLC*, 303 F.R.D. 245, 253 (E.D.Pa. 2014); *Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64, 67 (E.D.Pa.2006); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111–12 (E.D.Pa. 2002). This is particularly appropriate here. As discussed above, liability in this case arises out of the Notice's language. By definition, the Notice was sent to every member of the class. As a result, determining whether each member of the proposed class had a viable claim would require virtually identical analysis.

HHL contends that whether or not HHL intended to depose each of the class members would require an individualized assessment of HHL's intention vis a vis that particular recipient. (Def.'s Opp'n to Certification at 8.) This Court disagrees. All pertinent evidence shows that HHL had no intention of deposing *any* judgment debtors appearing pursuant to the Notice. HHL's instructions to counsel indicated that no court reporter would be present, and that counsel was not to place debtors under oath. As an oath and a court reporter are essential elements of a deposition under Pennsylvania law, whatever occurred when a recipient of the Notice appeared at the time and place specified on the Notice, it was not a deposition. Thus, by definition, and contrary to the clear import of the Notice, HHL did not intend to depose any of the judgment debtors who received the Notice. As such, individualized inquires into HHL's intentions regarding each class member are unnecessary to assign FDCPA liability.

### iii. Superiority

The superiority requirement of Rule 23(b)(3) asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Courts are to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307–08 (3d Cir. 1998). Rule 23(b)(3) lists four factors to consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; 2) any similar pending litigation; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

Based on these factors, the Court finds that class action is the superior means by which to adjudicate this controversy. First, the class members do not have a significant interest in individually controlling the prosecution of separate actions. The recovery on these claims is small and, because liability stems from the misleading nature of a single uniform letter, the same legal theory would govern each case. *Cf. O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 703 (E.D. Pa. 2018). Second, the Court is not aware of any similar pending litigation. Third, concentrating this litigation in a class action is desirable. "The Third Circuit has explained that class actions are 'fundamental to the statutory structure of the FDCPA.'" *Ebner v. Merchants & Med. Credit Corp.*, Civ. A. No. 14-6882, 2017 WL 1079966, at *3 (E.D. Pa. Mar. 22, 2017) (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004)). "Without the class action device, 'meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action.'" *Id.* There is nothing unique about this FDCPA case that would persuade the Court to depart from this general principal. Quite the opposite, the fact that this case involves uniform notices that trigger FDCPA liability in identical

fashion makes resolving this controversy via class action particularly appropriate. Finally, and for the same reason, this case presents no likely difficulties in managing a class action.

## IV.    CONCLUSION

For the reasons discussed above, HHL's motion to dismiss is denied. Barenbaum's motion for summary judgment is granted with respect to Count II of the Complaint, alleging that HHL violated 15 U.S.C. § 1692e, and denied with respect to Counts I and III alleging HHL violated 15 U.S.C. § 1692d and § 1692f respectively. HHL's motion for summary judgment is granted with respect to Counts I and III of the Complaint and denied with respect to Count II. Finally, Barenbaum's motion for class certification is granted.

An order consistent with this opinion will be docketed separately.