IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL BARENBAUM,** *on behalf of himself and all others similarly situated*, | : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | |
| **HAYT, HAYT & LANDAU, LLC,** | : | No. 18-4120 |
| Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                   **January 13, 2021**

Defendant Hayt, Hayt, & Landau, LLC ("Hayt") issued deposition notices to judgment debtors in Pennsylvania without ever intending to take a deposition. Daniel Barenbaum received one of these notices and appeared at the designated location, as did hundreds of other recipients of the notices. Barenbaum filed a class action lawsuit contending that Hayt's sending of the deposition notices without intent to take a deposition violates the Fair Debt Collections Practices Act ("FDCPA"). Following the Court's ruling on motions for summary judgment and class certification, the parties reached an agreement to settle the case.

The parties seek final approval of the class settlement. Class Counsel also filed a petition for attorneys' fees. For the reasons that follow, and with the additional distribution requirements set forth in the Court's accompanying Order, the motions for final approval of the settlement agreement and for attorneys' fees and costs shall be granted.

**I.      BACKGROUND**

    **A.      Facts**

The Court previously recited the facts of this case and therefore will not repeat them in detail here. In brief, Hayt obtained a default judgment against Barenbaum on behalf of Midland

1

Funding, LLC in the Court of Common Pleas of Bucks County, Pennsylvania. Seeking to recover the judgment, Hayt sent Barenbaum a "Notice of Deposition in Aid of Execution." The Notice directed Barenbaum to "appear and testify at a deposition" on July 6, 2018, and to produce documents to assist in the discovery of his income, assets, and property that could satisfy Midland's judgment. Barenbaum showed up for the noticed deposition, along with his brother, who is an attorney. An attorney for Hayt appeared at the designated location on behalf of Midland. No court reporter or other individual permitted to administer an oath under the Pennsylvania Rules of Civil Procedure was present, however.

As part of its efforts to recover debts owed to its clients, Hayt regularly conducted post-judgment "depositions" in aid of execution. The instructions provided to Hayt attorneys and other attorneys appearing for Hayt at these depositions indicated that the purpose of an appearance for a post-judgment deposition was to obtain payment for balance in full or enter a voluntary settlement with the judgment debtor. Hayt also explicitly directed counsel to not administer an oath to the judgment debtor as Hayt had not retained the services of a court reporter.

    **B.**    **History of the Litigation**

Plaintiff filed the Complaint against Hayt and Midland Funding on September 24, 2018. Defendants answered the Complaint. Plaintiff then voluntarily dismissed all claims against Midland. Following a Rule 16 Conference, the parties engaged in extensive discovery. Plaintiff filed a motion for summary judgment and class certification, and Defendant Hayt cross moved for summary judgment and filed a motion to dismiss arguing the case was moot. The Court partially granted summary judgment to Plaintiff, appointed Barenbaum as class representative, appointed Plaintiff's counsel Marcus & Zelman, LLC as class counsel, and certified a class, pursuant to Rule 23(b)(3), of:

> "all consumers residing in the Commonwealth of Pennsylvania who received a 'Notice of Deposition In Aid Of Execution' from the Defendant on an obligation owed or allegedly owed to Midland Funding, LLC, during the time period of September 25, 2017 to September 24, 2018, and who thereafter appeared as directed at the date, time and location noticed for the Deposition."

Hayt filed a Notice of Appeal of this Order, which was dismissed for lack of jurisdiction.

Plaintiff filed a motion for approval of notice to the class, which the Court granted over Hayt's opposition. The Court appointed First Class, Inc. as Notice Administrator and ordered Hayt to produce the names, addresses, telephone numbers, and email addresses of class members to Class Counsel. Notice of class certification was mailed to 328 class members on January 13, 2020. In response to the notice of class certification, one class member requested exclusion from the class. A trial on damages was scheduled for March 30, 2020, but it was continued because of the COVID-19 public health emergency.

After continuation of the trial, the parties agreed to settlement terms and resolution of attorneys' fees and moved the Court for preliminary approval of a class settlement. The Court granted preliminary approval of the settlement on August 17, 2020. Pursuant to the Court's preliminary approval, Class Administrator First Class, Inc. sent notice of the proposed settlement to 327 Settlement Class members on September 15, 2020 by First Class U.S. Mail with forwarding service requested. (Hughes Decl. in Supp. of Joint Mot. for Final Approval of Class Settlement [Hughes Decl.] ¶¶ 11-12.) The Notice of Settlement provided a description of the settlement terms and described a class member's opportunity to request exclusion from the class, object to the settlement, or attend the final fairness hearing. (Class Notice, Document No. 69-3, at 4-7.) Seven envelopes containing notice of the proposed settlement were returned without a forwarding address. One class member requested exclusion from the settlement. The Court held a final fairness

hearing on the proposed Class Settlement on January 6, 2021. There were no objections to the settlement presented to Class Counsel or the Court prior to or at the fairness hearing.

### C. Settlement Terms

The proposed Settlement Class is the same class that the Court previously certified pursuant to Rule 23(b)(3). Under the proposed settlement agreement, Hayt will create a class settlement fund of $8,200. Each class member who did not opt out of the settlement will receive a *pro rata* share of the class recovery, which is approximately $25.15 to each of the 326 class members.[1] Checks issued to claimants will be void sixty days from issuance if they have not been cashed. Any checks that have not been cashed by the void date will be donated as a *cy pres* award to the Pennsylvania Legal Aid Network, located at 118 Locust Street in Harrisburg, Pennsylvania.[2] Hayt shall pay directly to the Class Administrator all the reasonable costs and expenses necessary to administer and facilitate the Settlement Agreement. Under the proposed agreement, each class

---

[1] The Joint Motion for Final Approval of Class Settlement seeks to distribute a *pro rata* share of $25.70 among the 319 class members who did not opt out and whose Settlement Notice was not returned as undeliverable. (Mem. of Law in Supp. of Joint Mot. for Final Approval of Class Settlement [Joint Mem. of Law] at 4.) The Court finds that this proposed distribution is not permitted by the Settlement Agreement. The Settlement Agreement states "[t]he shares of any of the Settlement Class Members who cannot be located because the Notice [of Settlement] has been returned as 'undeliverable' will be donated" as a *cy pres* award, in accordance with the terms of the settlement. (Class Settlement Agreement, Document No. 73-2, ¶ 13a.)

As set forth in the accompanying Order, the Court will require that: (1) the Class Administrator shall attempt to find a current address for the seven Settlement Class members whose Notice of Settlement was returned as undeliverable using any email or telephone contact information that was previously provided by Defendant for those class members; and (2) the Class Administrator shall attempt to distribute settlement checks to those Settlement Class members at a confirmed current address (if one is determined through telephone or email contact with the Settlement Class member), or at the most current address available through the Class Administrator's standard address verification. If the checks are returned as undeliverable, they will be treated equivalently to any checks that have not been cashed by the void date.

[2] The Settlement Agreement refers to Legal Services of Pennsylvania, but at the fairness hearing the parties confirmed the address of the intended recipient organization, which is affiliated with the not-for-profit organization Pennsylvania Legal Aid Network.

member who did not timely exclude himself or herself from the Settlement Class will release his or her FDCPA claims against Hayt related to this particular Notice in Aid of Deposition received between September 25, 2017 and September 24, 2018. At the fairness hearing, the parties confirmed that class member releases do not encompass any other claims or defenses. Barenbaum also seeks a $7,800 incentive award as the named Plaintiff, as well as $114,000 in reasonable attorneys' fees.

## II. DISCUSSION

### A. Settlement

"The claims, issues, or defenses of a certified class…may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Because the settlement would bind class members, this Court may only approve the settlement upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *see Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). The law looks favorably upon class action settlements to conserve scarce judicial resources. *Gen. Motors*, 55 F.3d at 784.

The decision of whether a settlement is fair, reasonable, and adequate is guided by the nine-factor test enunciated in *Girsh*. The *Girsh* test directs the Court to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through

the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. The Third Circuit Court of Appeals has expanded upon the *Girsh* factors to include several permissive and non-exhaustive factors: (1) the maturity of the underlying substantive issues; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

        1.        *Complexity, expense, and likely duration of the litigation*

The first *Girsh* factor looks at the time and money likely to be expended if the litigation continued. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 320 (3d Cir. 2011). Since motions for summary judgment have already been resolved, this case has no alternative resolution to settlement except to advance to a trial on damages, which inevitably involves significant litigation expenses. Considering Hayt's premature attempt to appeal the Court's previous order on summary judgment and class certification, the Court also suspects that regardless of the outcome at trial, post-trial motions and an appeal would follow. Moreover, the current restrictions on trial dates because of the ongoing pandemic makes it likely that a trial on damages would be continued well into the future. Accordingly, the Court finds that this factor weighs in favor of approving the settlement.

### 2. *Reaction of the class to the settlement*

The Court must attempt to gauge whether members of the class support the settlement "by considering the number of objectors and opt-outs and the substance of any objection." *Sullivan*, 667 F.3d at 321. Silence from the class generally indicates agreement to the proposed settlement, although "the practical realities of class actions ha[ve] led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *Gen. Motors*, 55 F.3d at 812. The Class Administrator sent mail notice to 327 class members, and seven notices were returned as undeliverable. (Hughes Decl. ¶¶ 11, 13.) No objections were received, and only one request for exclusion from the settlement class was received. (*Id*. ¶¶ 15-16.) While the Court is circumspect not to overvalue the silence of class members because the cost of contesting may exceed the objector's pro rata benefit, the relatively low rate of opt-outs and lack of objections weighs in favor of approving the settlement.

### 3. *Stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor considers the current stage of the proceedings and the lawyers' knowledge of the strengths and weaknesses of their case. This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813; *accord In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Here, counsel has had ample time and information to learn the strengths and weaknesses of the case. The parties completed discovery, class certification, and motions for summary judgment before reaching settlement. The Court is convinced that this factor weighs strongly in favor of approving the settlement.

    4.  *Risk of establishing liability*

 "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. The more risks that Plaintiffs may face during litigation, the stronger this factor favors approving a settlement. *See Prudential*, 148 F.3d at 319. In examining this factor, the Court may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997). Although the Court has already decided the issue of liability, which would ordinarily weigh against settlement, Class Counsel notes Hayt's stated intent to appeal the issue of mootness because of Plaintiff's statutory recovery from a co-defendant and the uncertainty of this issue on appeal. (Joint Mem. of Law at 11.) Therefore, the Court finds that this factor is neutral.

    5.  *Risk of maintaining the class action through the trial*

 "Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Prudential*, 148 F.3d at 321. The parties have not pointed the Court to any specific argument for this factor or any indication the class was unmanageable. Moreover, this Court already rejected Hayt's arguments against class certification prior to any notice of a proposed settlement. This factor is neutral.

    6.  *Risk of establishing damages, ability of Defendant to withstand a greater judgment, range of reasonableness of the settlement in light of the best possible recovery, and range of reasonableness of the settlement in light of all the attendant risks of litigation*

 The remaining four *Girsh* factors assess damages in various different capacities. First, the risk of establishing damages "attempts to measure the expected value of litigating the action rather

than settling it at the current time." *Gen. Motors*, 55 F.3d at 816. Next, to assess a defendant's ability to withstand a greater judgment, the Court considers whether a defendant's inability to pay led to a lesser financial settlement than would ordinarily be awarded. *See Krimes v. JPMorgan Chase*, Civ. A. No. 15-5087, 2017 WL 2262998, at *9 (E.D. Pa. May 24, 2017). "The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. In conjunction, these final two factors ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). "Notably, in conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan*, 667 F.3d at 324.

These factors must be uniquely considered in the FDCPA class action context, where an award of class statutory damages is "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii). There is disagreement among courts about the appropriate means of measuring a debt collector's "net worth" under the FDCPA. While some courts have compared balance sheet assets and liabilities, others have required inclusion of other assets in the calculation of a company's net worth, such as equity, capital stock, and goodwill. *Compare Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 473 (E.D. Pa. 2000), *with Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D. Pa. 2004). In determining the appropriate amount of class statutory damages, the FDCPA further requires the Court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and

the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). Plaintiff also sought actual damages on behalf of the class, which are recoverable in addition to statutory damages. 15 U.S.C. § 1692k(a)(1). At this stage of the litigation, the Court has not had occasion to assess evidence of the appropriate amount of class statutory damages or any actual damages.

The parties agree that a settlement class recovery of $8,200 is equal to or greater than 1% of Hayt's net worth, which is the maximum statutory damages that the class could recover at trial. (Joint Mem. of Law at 11; Supp. Br. in Further Supp. of Pl.'s Mot. For Final Approval [Supp. Br.] ¶ 12.) Class Counsel states that its valuation of Hayt's net worth is based on Hayt's balance sheet value displayed in financial statements, which were filed under seal and reviewed by the Court, and deposition testimony "to inquire into any other assets that should have been included in the Defendant's net worth." (Supp. Br. ¶¶ 11-12; Ex. B to Supp. Br.) The Court will not decide the appropriate definition of "net worth" for purposes of approving the settlement. *See Saunders v. Berks Credit & Collections, Inc.*, Civ. A. No. 00-3477, 2002 WL 1497374, at *11 (E.D. Pa. July 11, 2002). It is sufficient that Class Counsel has shown that it assessed the Defendant's net worth through discovery and has a reasonable basis to believe the settlement class recovery is at or above the maximum statutory damages. While Plaintiff also pleaded actual damages on behalf of the class, the Court acknowledges that these can be difficult to prove on a class-wide basis. In light of the possibility that class members would receive less than the proposed settlement class recovery after a trial on damages, these factors weigh in favor of approval of the settlement.

### 7. Prudential *factors*

The Court also concludes that the *Prudential* factors weigh in favor of approving the settlement. First, this litigation has proceeded far enough that the lawyers and this Court can assess

the possible outcome of a trial on damages and litigation risk on appeal. Second, class members were provided the opportunity to opt out of the settlement and only one did so. Third, as will be discussed below, the request for attorneys' fees is reasonable. Finally, the procedure for processing individual claims is fair and reasonable, as all class members will receive an equal *pro rata* share of the class recovery by mail.

### B. Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure authorizes an award of "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Court must direct a thorough review of the request for fees. *Gen. Motors*, 55 F.3d at 819. The party requesting fees must demonstrate the reasonableness of its request and therefore must submit evidence to support its request. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

There are two methods for calculating attorneys' fees in a class action: the percentage-of-recovery method and the lodestar method. *Prudential*, 148 F.3d at 333. The percentage-of-recovery method is preferred when the fee is to be paid from a common fund "because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The lodestar method is used in statutory-fee-shifting cases. *Prudential*, 148 F.3d at 333 (noting that lodestar method "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation"). The FDCPA is a fee-shifting statute. A consumer who prevails under the law is entitled to "the costs of the action, together with a reasonable attorney's

fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Accordingly, the Court will employ the lodestar method to determine the reasonable attorneys' fee for Class Counsel.[3]

The lodestar is calculated by multiplying the number of hours spent by counsel by a reasonable hourly rate. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). A court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Student Pub. Interest Research Grp. of N.J., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1449 (3d Cir. 1988) ("the community market rule vindicates the underlying policies of the fee shifting statutes."). To arrive at a reasonable number of hours worked, the court must excise those hours deemed excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. If counsel meets its burden of demonstrating the claimed rates and number of hours worked are reasonable, the lodestar produces a presumptively reasonable attorney's fee. *Maldonado*, 256 F.3d at 184.

Class Counsel seeks an attorneys' fee award of $114,000 for work on this litigation. (Marcus Decl. in Supp. of Pl.'s Mot. for Att. Fees [Marcus Decl.] ¶ 7.) Counsel states it has spent 245.6 hours litigating this case, and its lodestar for the work performed in this matter is $120,445. (*Id.* ¶ 8.) Counsel also states the firm incurred $4,397.51 in costs and expenses. (*Id.*) If the lodestar

---

[3] Class Counsel asks the Court to review the *Gunter* factors to assess the reasonableness of its fees. (Mem. of Law in Supp. of Pl.'s Mot. for Att. Fees at 10-17.) The *Gunter* factors are applicable in common fund cases where the fees are based on a percentage of the clients' settlement award. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Here, Class Counsel is not seeking fees based on the percentage-of-recovery method, so the application of these factors is not an appropriate method of assessing reasonable attorney's fees.

and expenses are reasonable, then Class Counsel is seeking approximately 91% of its total attorneys' fee and costs.

Class Counsel has presented records to support that Ari Marcus worked 198.5 hours on this matter and Yitzchak Zelman worked 47.1 hours. (Supp. Br. ¶¶ 7-8; Ex. A to Supp. Br.) These hours include time spent investigating the claims, preparing the Complaint, reaching a settlement agreement with Midland, preparing for and attending a pretrial conference, preparing written discovery and responses, conducting and defending depositions, drafting motions for class certification, summary judgment, and class notice, opposing Hayt's motions for summary judgment and dismissal, trial preparation, negotiating a settlement agreement with Hayt, and motions for approval of settlement and attorneys' fees. (Ex. A to Supp. Br.) The Court has reviewed Class Counsel's submissions and deems the hours spent on this litigation to be reasonable. Class Counsel has also adequately documented its reasonable costs and expenses of $4,397.51. (*Id.*)

The request for fees details the experience of the lawyers involved in this litigation. (Marcus Decl. ¶ 4; Ex. A to Marcus Decl.) Marcus seeks an award of fees based on his regular hourly-billing rate of $500 per hour, while Zelman seeks his regular hourly-billing rate of $450 per hour. (Marcus Decl. ¶¶ 10-11.) This Court has reviewed the rates requested based on the skill and experience of the individuals involved in litigating this case. The rates requested by Class Counsel are relatively high for attorneys with their length of practice, but Class Counsel has significant experience litigating this kind of consumer case. (Ex. A to Marcus Decl.) In addition, the rates sought are commensurate with rates awarded to these attorneys by other courts in this Circuit. *See Coulter v. Receivable Mgmt. Sys.*, Civ. A. No. 17-3970 (E.D. Pa. June 4, 2020) (approving settlement where lodestar was equivalent to $450 per hour); *Martin v. Receivable*

*Mgmt. Sys.*, Civ. A. No. 18-9359 (D.N.J. Jan. 7, 2020) (approving settlement based on Marcus's billing $500 per hour and Zelman's billing $425 per hour). Moreover, because Class Counsel seeks approximately 91% of its lodestar and expenses, this is the equivalent of a blended hourly rate of approximately $446 per hour. This leads the Court to conclude that Class Counsel's request for $114,000 in attorneys' fees is reasonable.

### C. Incentive Award

Incentive awards to class representatives lie within the discretion of the court and may be awarded for the benefit conferred on the class. *See Hall v. Best Buy Co.,* 274 F.R.D. 154, 173 (E.D. Pa. 2011); *In re Plastic Tableware Antitrust Litig.,* Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995). Incentive awards are designed to compensate the named Plaintiff for risks undertaken and services provided in representing the class. *See Sullivan*, 667 F.3d at 333 n.65. When assessing such awards, courts examine the financial, personal, and reputational risks to the representative, his or her involvement in the litigation, and the degree to which he or she benefitted as a class member. *Hall,* 274 F.R.D. at 173; *Plastic Tableware*, 1995 WL 723175, at *2.

The settlement agreement provides for a $7,800 incentive award to Daniel Barenbaum. Class Counsel argues that the award is appropriate because Barenbaum provided valuable assistance to counsel throughout the litigation, including: submitting to interviews, providing documents, sitting for a deposition, and conferring with counsel regarding settlement. (Marcus Decl. ¶ 23.) Specifically, Barenbaum "missed a full day of work for the deposition, and took several hours off of work throughout the two years that this case was being litigated in order to aid in the litigation of this action." (Supp. Decl. ¶ 13.) Class Counsel confirmed at the fairness hearing that Plaintiff is an hourly worker who is not paid for hours missed at work. Class Counsel further contends that the award is appropriate because it is similar to incentive awards approved by other

courts in this District, and it is not being paid from the class settlement fund. (Mem. of Law in Supp. of Pl.'s Mot. for Att. Fees at 18-19.)

The Court agrees that Barenbaum has contributed significantly to the favorable outcome of this litigation. He provided substantial assistance to Class Counsel in litigating the claims over the course of two years at the personal cost of foregone work hours. He also endured the reputational risks of publicly pursuing this action about his experience with debt collection—a personal financial matter that most would prefer to keep private. Although this award is on the higher end of reasonable incentive awards, it is within the range of awards to plaintiffs in other consumer law cases. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 111 (D.N.J. 2018) (collecting cases). Under these circumstances, the Court finds the award to Barenbaum is fair and reasonable.

### III. CONCLUSION

Having reviewed the record before the Court and the parties' submissions, the Court concludes that the requirements of Rule 23 have been satisfied, and that the settlement is fair, reasonable, and adequate. Further, the request for attorneys' fees and costs is reasonable. The Court therefore grants the motions to approve the settlement and for attorneys' fees and costs, including an incentive award for Plaintiff. An Order approving the settlement—with specific additional distribution requirements—and the petition for attorneys' fees and costs will be docketed separately.